United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Exist, Inc., Plaintiff | ) |
| | ) |
| v. | ) Civil Action No. 14-61354-Civ-Scola |
| | ) |
| Woodland Trading Inc., Defendant | ) |

## Order Granting Motion To Dismiss

Through this lawsuit, Exist, Inc. complains that Woodland Trading, Inc. made and sold garments featuring designs that are identical to Exist's copyrighted designs. (Compl. ¶13–15, ECF No. 1.) Woodland Trading asks the Court to dismiss this case because, it contends, the Court lacks personal jurisdiction over it. Woodland Trading argues that it's a New York company that has virtually no contact with Florida. For the reasons explained in this Order, the Court grants Woodland Trading's motion to dismiss for lack of personal jurisdiction.

### 1. Legal Standard

"A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." *United Techs. Corp. v. Mazer,* 556 F.3d 1260, 1274 (11th Cir. 2009). A defendant challenging personal jurisdiction must present evidence to counter the plaintiff's allegations. *Internet Solutions Corp. v. Marshall,* 557 F.3d 1293, 1295 (11th Cir. 2009). Once the defendant has presented sufficient evidence, "the burden shifts to the plaintiff to prove jurisdiction by affidavits, testimony or documents." *Id.* If the parties' evidence conflicts, a court must resolve inconsistencies in favor of the plaintiff. *Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 855 (11th Cir. 1990).

In federal-question cases, such as copyright- or trademark-infringement lawsuits, a federal district court must first ensure that it has personal jurisdiction over the defendant under the State's long-arm statute. *See id.* at 855–56. If it does, the court must then "analyze this long-arm jurisdiction under the due process requirements of the federal constitution." *Id.* at 857.

## 2. Discussion
### A. This Court has specific personal jurisdiction over Woodland Trading under Florida's long-arm statute.

Florida's long-arm statute permits a court to exercise personal jurisdiction over a person who commits a tortious act within Florida. Fla. Stat. § 48.193(1)(a)(2) (2014). This long-arm jurisdiction even extends to defendants who commit their tortious acts outside the state if their acts "cause injury in Florida." *Posner v. Essex Ins. Co., Ltd.*, 178 F.3d 1209, 1216 (11th Cir. 1999). For purposes of this analysis, copyright infringement is considered a tort. *Cf. BUC Int'l Corp. v. Int'l Yacht Council Ltd.*, 517 F.3d 1271, 1278 (11th Cir. 2008) ("[C]opyright infringement is in the nature of a tort.").

Exist, a Florida company, has alleged that it suffered damages to its business because of Woodland Trading's copyright violation. (Compl. ¶22, ECF No. 1.) This is sufficient to establish specific jurisdiction under Florida's long-arm statute. *Posner*, 178 F.3d at 1216 (noting that Florida's long-arm statute "extends jurisdiction over defendant whom plaintiff alleged caused injury in Florida").

Woodland Trading argues that "economic injury, unaccompanied by physical injury or property damage, is insufficient to subject a nonresident defendant to personal jurisdiction." (Mot. Dismiss 12, ECF No. 12 (quoting *Canadian Steel Fabricators, Ltd. v. Garner*, No. 11-20039, 2011 WL 4424431, at *4 (S.D. Fla. Sept. 22, 2011) (Huck, J.)).) That argument misses the mark. The economic-injury-is-insufficient rule only applies when analyzing whether jurisdiction exists under Florida Statute Subsection 48.193(1)(a)(6). That Subsection permits a court to exercise jurisdiction over a person who causes injury to persons or property within Florida arising out of an act or omission by the defendant outside of Florida. Fla. Stat. § 48.193(1)(a)(6) (2014). But Exist is asserting jurisdiction under a different Subsection of the long-arm statute— Subsection 48.193(1)(a)(2). As previously explained, Subsection 48.193(1)(a)(2) permits a court to exercise jurisdiction over a person who commits a tortious act outside of Florida that causes injury inside Florida. *Posner*, 178 F.3d at 1216. Since Exist has alleged that Woodland Trading's copyright violation caused it injury inside Florida, personal jurisdiction exists over Woodland Trading under Florida's long-arm statute.

### B. Exercising jurisdiction over Woodland Trading would violate Woodland Trading's Due Process rights.

After ensuring that it has personal jurisdiction over a particular defendant under the forum state's long-arm statute, a court must next ensure that invoking personal jurisdiction would not violate the defendant's Due Process rights. The Eleventh Circuit uses a three-part Due Process test:

> (1) whether the plaintiff's claims arise out of or relate to at least one of the defendant's contacts with the forum;
> (2) whether the nonresident defendant purposefully availed himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws; and
> (3) whether the exercise of personal jurisdiction comports with traditional notions of fair play and substantial justice.

*Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1355 (11th Cir. 2013) (internal quotation marks omitted).

As to the first prong (*arising out of or relatedness*) a court should "focus on the direct causal relationship between the defendant, the forum, and the litigation." *Id.* at 1355–56. As to the second prong (*purposeful availment*) a court may apply the traditional *minimum-contacts test*, or, in intentional-tort cases, may utilize the *effects test*. "Under the 'effects test,' a nonresident defendant's single tortious act can establish purposeful availment, without regard to whether the defendant had any other contacts with the forum state." *Id.* at 1356 (citation omitted). "This occurs when the tort: (1) was intentional; (2) was aimed at the forum state; and (3) caused harm that the defendant should have anticipated would be suffered in the forum state." *Id.* (internal punctuation & citation omitted). As to the third prong (*fair play and substantial justice*) a court should "consider these factors: (1) the burden on the defendant; (2) the forum's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; and (4) the judicial system's interest in resolving the dispute." *Id.* at 1358 (quotation marks omitted).

### (1) *Exist's claims do not arise out of or relate to Woodland Trading's contacts with Florida.*

The arising-out-of-or-relatedness prong asks: is there any relationship between the defendant, the forum, and the lawsuit? *Louis Vuitton*, 736 F.3d at 1356. Put simply, "the defendant must have contacts related to or giving rise to the plaintiff's cause of action." *Fraser v. Smith*, 594 F.3d 842, 850 (11th Cir. 2010). For example, in the *Louis Vuitton* case, the court found that the plaintiff's claims were related to the defendant's Florida contacts because the defendant sold allegedly counterfeit goods to customers in Florida and accepted payment from those Florida customers. *Louis Vuitton*, 736 F.3d at 1356. At a minimum, a plaintiff must show that the defendant had *some* contact with the forum state *and* that the contact was a but-for cause of the alleged tort. *Fraser v. Smith*, 594 F.3d 842, 850 (11th Cir. 2010).

In this case, Exist alleges that Woodland Trading sold the infringing garments "to numerous parties in the fashion and apparel business, including mass retailers in this district, such as Ross [Stores, Inc.]." (Compl. ¶13, ECF No.

1.) But Woodland Trading has submitted evidence that it only does business "through its New York showroom." (2d Kakar Decl. ¶5, ECF No. 16-1.) This includes "all of its solicitation[s], meetings, negotiations, showing of samples, and back office administrative work." (*Id.*) In direct response to Exist's allegations regarding sales to Ross Stores, Woodland Trading explains that it "solicits and sells its products only to Ross's New York office." (*Id.* at ¶9; *accord id.* ¶11.) Responding to Exist's allegations that Woodland Trading sold the infringing garments to other customers, Woodland Trading explains that even if one of its "customers does not have a [New York] buying office, like Ross does, such customers routinely travel to Woodland [Trading's] New York office for sales pitches, review of new product[s], and for transacting business with Woodland [Trading]." (*Id.* ¶12–13.) Woodland Trading does not even ship goods to Florida; it ships goods to a "particular customer's designated consolidator or trucker in either California or New York." (*Id.* ¶18.) So, in this case, it would not have shipped any of the allegedly infringing garments into Florida. (*See id.*) Woodland Trading explains that it has just one customer based in Florida, but that it "has not sold the allegedly infringing goods to [that] customer." (*Id.* ¶14–15.) In summary, Woodland Trading has submitted competent evidence to counter Exist's jurisdictional allegations.

Exist has failed to show that Woodland Trading had any contact with Florida relating to the allegedly infringing garments. In light of Woodland Trading's affidavit, Exist must present some evidence to show that Woodland Trading had some contact with Florida *and* that the contact was a but-for cause of the copyright violation. *Fraser v. Smith*, 594 F.3d 842, 850 (11th Cir. 2010). Exist has not met this burden. The uncontested evidence demonstrates that Woodland Trading's only contact with Florida is doing business with its single Florida customer. (2d Kakar Decl. ¶14–17, 19–23, ECF No. 16-1.) Since Woodland Trading has not sold any of the allegedly infringing garments to its sole Florida customer, Exist cannot establish that Woodland Trading's contacts with Florida are a but-for cause of the copyright violation. In other words, Exist cannot show that Woodland Trading's sale of garments to its Florida customer caused Exist's copyright-infringement damages. The most that Exist can establish is that Woodland Trading's sale of garments to its non-Florida customers caused Exist's copyright-infringement damages—but those sales have no connection with Florida.

> **(2) Exist can establish that Woodland Trading purposefully availed itself of jurisdiction in Florida, but exercising personal jurisdiction in Florida would not comport with traditional notions of fair play and substantial justice.**

The second prong of the Due Process analysis—purposeful availment—is relatively easy to establish in intentional-tort cases. Essentially, a person who commits an intentional tort may be subject to personal jurisdiction in the state where the victim of that tort lives because, by directing the effects of the tort at the victim's home, the tortfeasor has purposefully availed himself or herself of the jurisdiction of the victim's state. *See Calder v. Jones*, 465 U.S. 783, 789–90 (1984); *accord Licciardello v. Lovelady*, 544 F.3d 1280, 1287–88 (11th Cir. 2008).

Exist can establish the second prong because it has alleged that Woodland Trading intentionally violated its copyright in making and selling the allegedly infringing garments. The effects of Woodland Trading's copyright violation were felt in Florida. Consistent with the rational in cases like *Calder* and *Licciardello*, since Woodland Trading's alleged intentional tort was directed at Exist in Florida, Woodland Trading is deemed to have purposefully availed itself of the privilege of conducting activities within Florida, thus invoking the benefit of Florida's laws.

The third prong of the Due Process analysis—fair play and substantial justice—asks several questions: (1) what is the burden on the defendant?; (2) what is the forum's interest in adjudicating the dispute?; (3) what is the plaintiff's interest in obtaining convenient and effective relief?; and (4) what is the judicial system's interest in resolving the dispute? *Louis Vuitton*, 736 F.3d at 1358.

The third prong of the Due Process analysis tips in Woodland Trading's favor. First, the burden on Woodland Trading in having to defend this lawsuit in Florida would be significant. As it has established, Woodland Trading has virtually no connection with Florida, and does all of its business in New York with customers who travel to its New York office to transact all aspects of the business. Florida has a slight interest in adjudicating this dispute since Exist is a Florida company; however since Exist's claim is based upon a federal statutory right Florida's interest is less than if Exist were asserting a state-law tort. Exist has a legitimate interest in obtaining convenient and effective relief. But Exist has not submitted any evidence regarding its contacts with New York. In this absence of information, the Court cannot conclude that Exist's inconvenience in having to litigate this matter in New York is equal to Woodland Trading's inconvenience in having to litigation this matter in Florida. This factor tips in Woodland Trading's favor. In this case, the final factor does not affect the analysis much at all. While the judicial system has an interest in resolving the parties' dispute, our Nation's system of district courts ensures that this matter can be litigated just as well in New York as in Florida.

### C. Woodland Trading is not subject to general jurisdiction in Florida.

"A defendant who is engaged in substantial and not isolated activity within [Florida], whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of [Florida], whether or not the claim arises from that activity." Fla. Stat. § 48.193(2) (2014). "Florida courts have held the term 'substantial and not isolated activity' used in § 48.193(2) means 'continuous and systematic general business contact' with Florida. *Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1318 (11th Cir. 2006) (citing *Woods v. Nova Cos. Belize Ltd.*, 739 So. 2d 617, 620 (Fla. 4th DCA 1999) & *Helicopteros Nacionales de Colombia S.A. v. Hall*, 466 U.S. 408, 415–16, (1984)).

In this case, Woodland Trading has established, through unrefuted evidence, that it is neither licensed nor registered to conduct any sort of business in Florida.  (2d Kakar Decl. ¶21, ECF No. 16-1.)  It does not send any of its employees to Florida to solicit business, nor does it participate in any trade shows or other events in Florida. (*Id.* ¶20.) Woodland Trading "does not have any office, showroom, employees, warehouse, inventory or any assets, phone number, mailing address, or a bank account in Florida." (*Id.* ¶22.) Woodland Trading does not even have "a website or any other interactive electronic medium from where it advertises, solicits or displays its products." (*Id.* ¶23.) Woodland Trading has just one Florida customer, who travels to New York to do business. (*Id.* ¶¶ 14 & 16.)  Its sales to the single Florida-based customer have accounted for just 1.5% of its total revenues from 2010 through 2013.  (*Id.* ¶17.)

Woodland Trading's contacts with Florida are insubstantial and isolated. This Court finds that Woodland Trading's contacts with Florida do not measure up to the required continuous and systematic general business contacts necessary to sustain a finding of general personal jurisdiction under either the Florida long-arm statute or the Due Process Clause of the Federal Constitution.

### D. Exist has had ample time to conduct jurisdictional discovery.

In responding to Woodland Trading's Motion to Dismiss, Exist also requests 45 days to conduct jurisdictional discovery.  Discovery in this case commenced on September 3, 2014.  *Compare* Fed. R. Civ. P. 26(d)(1) *with* Joint Sch. Report, ECF No. 19.  This means that Exist has had over five months to engage in discovery, including jurisdictional discovery.  That is nearly four times the amount of time Exist requested.  Presumably, if Exist had uncovered some additional evidence to support its assertion of personal jurisdiction it would have made a supplemental filing with the Court, sought leave to amend its complaint, or found some other avenue to bring this newly discovered evidence to the Court's attention.  Having failing to do so, it cannot now claim prejudice.

### 3. Conclusion

Although Florida's long-arm statute would permit this Court to exercise personal jurisdiction over Woodland Trading, doing so would violate Woodland Trading's Due Process rights. It is not enough for Exist to meet one out of three prongs of the Due Process analysis. For the reasons explained in this Order, the Court **grants** Woodland Trading's Motion to Dismiss for lack of personal jurisdiction (ECF No. 12). The Court **dismisses** this case without prejudice, and directs the Clerk to **close** this case.

**Done and ordered** in chambers at Miami, Florida on March 2, 2015.

_____
Robert N. Scola, Jr.
United States District Judge